*1372 OPINION.
Siepkin :
The petitioner alleges error on the part of the respondent in holding that the petitioner, during the years 1920 and 1921, was not entitled to personal service classification.
Section 200 of the Revenue Acts of 1918 and 1921 provides in part:
The term “ personal service corporation ” means a corporation whose incomb is to be ascribed primarily to the activities of the principal owners or stockholders who are themselves regularly engaged in the active conduct of the affairs of the corporation and in which capital (whether invested or borrowed) is not a material income-producing factor; but does not include any foreign corporation, nor any corporation 00 per centum or more of whose gross income consists either (1) of gains, profits, or income derived from trading as a principal, or (2)' of gains, profits, commissions, or other income, derived from a Government contract or contracts made between April 6, 1917, and November 11, 1918, both dates inclusive.
The petitioner obtained its income from various sources, among which were commissions on rents collected, sales of property, placing of insurance, making repairs on clients’ property, making loans, and from interest on loans.
The petitioner owned no real estate and had no paid-in cash or tangible property. When money was needed in the business, the petitioner borrowed it from the banks on the personal notes of Franciscus and Kunz, or, used the accumulated profits of the business which were distributed semiannually.
The testimony shows that money left by clients after a sale of property, funds of trust estates which were left with the petitioner to be invested, and maturities from mortgages which were left for the petitioner to collect and invest, were used in the business, but it does not appear clearly whether these funds were used by the petitioner as principal or as agent for the clients.
The petitioner loaned money for its clients and charged the borrower thereof a commission. Sometimes a client for whom peti *1373 tioner had placed a loan wished to obtain cash for it and petitioner would buy the loan and hold it until it could he disposed of. Sometimes a borrower would apply to petitioner for a loan and petitioner would advance the money and carry the loan until it could be sold.
The amount of interest which the petitioner received from such loans over the amount of interest which petitioner had to pay upon money borrowed for that purpose in 1920 was $2,548.90, or about 4.25 per cent of $59,908.65, the gross income for that year.' During 1921 this item amounted to $1,098.49, or about 2.29 per cent of $52,122.86, the gross income for that year. The amount of commissions received by the petitioner on loans and sales in 1920 was $35,192.08 and in 1921 the amount was $28,532.78. The amount received as commissions on loans is not segregated. The total of loans made by the petitioner in 1920 was $282,015 and in 1921, was $208,340.57. It is not shown how much of these amounts were loans made by petitioner on behalf of clients and how much constituted loans which the petitioner itself made and carried.
In 1920 the petitioner borrowed $64,000 and the average monthly balance of such borrowed money throughout the year was about $22,000. In 1921 petitioner borrowed a total of $65,000 and the average throughout the year was about $16,000.
The petitioner made advances for clients for repairs on the clients’ property and carried such amounts until they were paid by the rent from such property.
The testimony and the statement of assets and liabilities indicate that the petitioner borrowed this money and that the amount the petitioner owed in this connection was $25,949.68 on February 4,1920, $21,951.43 on December 31, 1920, and $63,716.30 on December 31, 1921. This is an addition to the other money which the petitioner owed the bank, which amounted to $32,000 on February 4, 1920, $27,000 on December 31, 1920, and $20,000 on December 31, 1921. Thus the average borrowed capital which petitioner employed to earn $59,908.85 gross income in 1920 was about $53,000.
In 1921 it employed an average of about $66,000 of borrowed money to earn a gross income of $52,122.86.
In Hubbard-Ragsdale Co. v. Dean, 15 Fed. (2d) 410, the court said:
We come then to the second element of the definition; that is, whether capital (invested or borrowed) is a material income producing factor. Here the test is not exclusively whether the corporation bought and sold on its own account, or did a strictly commission business; it is whether it necessarily requires capital for, and the fact uses it in the conduct of its business. If the nature of the business is such that it cannot be carried on at all without the constant use of capital, and such use of capital plays a vital part in the successful conduct of the business, it cannot he said that its use in the business is merely incidental.
*1374 Irrespective of the amount of income directly received by petitioner from the use of capital, it is our opinion that capital was a necessary factor in the conduct of the business.
The petitioner is not entitled to personal service classification during the years in controversy, since it has not met one of the requirements of section 200 of the Revenue Acts of 1918 and 1921.

Judgment will he entered for the resfondent.